**Petition of Department of Public Service Respecting Application of General Order 65 and Rule 4.100 to Small Power Projects of 100 KW or Less**

[632 A.2d 1373]

No. 90-043

Present: Allen, C.J., Gibson, Dooley and Morse, JJ.

Opinion Filed October 22, 1993

*S.R. Thanhauser,* pro se, Newbury, Appellant.

*Kenneth C. Picton,* Rutland, for Appellee Central Vermont Public Service Corp.

*Geoffrey Commons,* Special Counsel, Montpelier, for Appellee Department of Public Service.

**Morse, J.** White Oak Water Power, a small power producer, appeals from an order of the Public Service Board rejecting White Oak's claim that the Board failed to give sufficient notice of a rule providing for annual 10% decreases in the minimum rate that utilities pay small power producers. We affirm.

In 1981, the Board adopted General Order No. 65, which, based on an estimate of avoided costs of alternative energy, set the flat rate to be paid to small power producers during the following year at $.078 per kilowatt hour. The Order provided that the rate was subject to revision after one year, but that "[s]ubsequent rates shall not be adjusted downward by more than 10% of the rate established herein in the absence of a strong factual showing that such a reduction is justified." In December 1982, shortly before White Oak submitted its applications for a small hydro-electric power project license and a certificate of public good, the Board published notice of proposed Rule 4.100. The notice stated, in part, that the proposed rule "specifies the methodologies to calculate the rates for purchase of electricity from small power producers," "sets guidelines for . . . the rate for sale of electricity to small power producers," and "amends and replaces existing General Order No. 65."

On January 4 and 5, 1983, the Board held public hearings, in which White Oak participated, on the proposed rule. The draft of the proposed rule presented at the hearings provided that all existing projects would be entitled to a minimum rate of $.078 per kilowatt hour; however, the rule the Board forwarded to the legislative committee on administrative rules on March 11, 1983 guaranteed that rate only until June 1, 1984, with 10% reductions in the minimum rate that year and each subsequent year. In a March 16 letter sent to all interested parties, the Board explained that the annual decreases in the minimum rate were added "to encourage existing small power producers to commit to long-term contracts," which "would provide greater benefits to the utilities and to their customers through cost and power supply planning stability." As adopted in 1984, Rule 4.100 included the provision calling for annual decreases in the minimum rate. See Rule 4.104(G).

In May 1988, in response to a petition by the Department of Public Service, the Board ordered that the 10% rate reduction scheduled for June 1 of that year be deferred for one year. Two weeks later, however, the Board granted Central Vermont Public Service Corporation's (CVPSC) motion for reconsideration of that order. In July 1988, White Oak filed a "counterclaim" challenging the Board's adoption of Rule 4.100 and seeking to

recover the difference between the $.078 rate and the lesser rates it was paid by CVPSC. A hearing was held on the counterclaim in February 1989. In May 1989, the Department filed a motion to defer further rate reductions. The Board denied the motion, thus returning to the original provision requiring a 10% decrease in rates, effective June 1, 1989. White Oak filed a motion to amend the Board's order. In December 1989, the Board dismissed White Oak's counterclaim and denied its motion to amend, ruling that the notice of the final proposed rule was sufficient.

As noted by the Board, the gravamen of White Oak's counterclaim and its motion to amend—and the principal claim raised on appeal—is that the notice for Rule 4.100 was insufficient with respect to provision 4.104(G) because the proposed rule did not include the annual 10% decrease in the minimum rate for small projects that was included in the final proposed rule sent to the legislative committee.

We conclude that the Board's notice concerning provision 4.104(G) was sufficient. In compliance with the APA, the Board published notice of the proposed rule on two separate occasions, December 16 and December 23, 1982. See 3 V.S.A. § 839(a). As shown above, the December 16 notice included "a concise summary of the effect of the rule," see *id.* § 839(b)(3), which apprised interested parties that the rule would specify methodologies for calculating rates for small power producers and would replace General Order 65. White Oak received both notices and, indeed, participated in the January 4 and 5, 1983 hearings on the rule.

The fact that the proposed rule was amended after public hearing does not affect its validity unless it was amended in a manner that caused "the published summary of the rule to become misleading or inadequate." 3 V.S.A. § 846(b)(2). We agree with the Board's conclusion that the change in the rule did not render the notice inadequate. The notice of the proposed rule indicated that General Order 65 would be replaced by the new rule, which would specify the methodologies for setting rates. That is precisely what the final rule did. Neither White Oak nor any other interested party was "guaranteed" the methodology suggested in the proposed rule; indeed, if that were the case, the public hearings would have been superfluous. See *Rybachek*

*v. Environmental Protection Agency,* 904 F.2d 1276, 1288 (9th Cir. 1990) ("Informed changes and distinctions are the very *raison d'etre* of the notice-and-comment period."); see also *Vermont Ass'n of Realtors v. State,* 156 Vt. 525, 534, 593 A.2d 462, 467 (1991) (APA not violated where notice of proposed rule contained sufficient information to alert interested parties as to general topic of rules).

Federal case law concerning the sufficiency of notice of rules amended after comment supports our conclusion that the notice here was adequate. The federal courts have generally cited one of two tests in determining whether an agency's final rule is so different from the proposed rule that a new notice and comment period is required: a new comment period is not required (1) if the final rule is in character with the original scheme and was a logical outgrowth of the notice and comments stemming from the proposed rule, or (2) the notice fairly apprised interested persons of the subject and the issues that would be considered so that those persons had an opportunity to comment. Annotation, *What Constitutes Adequate Notice of Federal Agency Rule as against Objection That Rule Adopted Differed in Substance from That Published as Proposed in Notice,* 96 A.L.R. Fed. 411, 417 (1990); see *Brazos Elec. Power Co-op. v. SWPA,* 819 F.2d 537, 543 (5th Cir. 1987) (stating two tests employed by federal circuits).

Thus, "the submission of a proposed rule for comment does not of necessity bind an agency to undertake a new round of notice and comment before it adopts a rule which is different—even substantially different—from the proposed rule." *McCulloch Gas Processing Corp. v. Department of Energy,* 650 F.2d 1216, 1222 (Temp. Emer. Ct. App. 1981); see *Rybachek,* 904 F.2d at 1287 ("the fact that a final rule varies from a proposal, even substantially, does not automatically void the regulations"). The notice must be sufficient to apprise interested parties of the issues involved so as to allow those parties an opportunity to participate in the rulemaking, but it need not specify every precise proposal that may ultimately be adopted. *Pennzoil Co. v. Federal Energy Regulatory Comm'n,* 645 F.2d 360, 371 (5th Cir. 1981); *Action for Children's Television v. Federal Communications Comm'n,* 564 F.2d 458, 470 (D.C. Cir. 1977).

Although here the final proposed rule did differ significantly from the initial proposed rule, the final rule was similar to what had been the state of the law before the new rule was proposed. Cf. *American Fed'n of Labor v. Donovan*, 757 F.2d 330, 339 (D.C. Cir. 1985) (final rule was not "logical outgrowth" of proposed rule where notice of proposed rule gave no indication that current regulations altered by final rule would be changed in any respect); *Chocolate Mfrs. Ass'n of United States v. Block*, 755 F.2d 1098, 1106–07 (4th Cir. 1985) (in light of fact that flavored milk had always been permitted by prior regulations, and there was no suggestion of change in this policy by proposed rule, notice of final rule that amended proposed rule by deleting flavored milk from agency program was inadequate). Given the fact that the proposed rule suggested a change in the current policy, which permitted annual decreases up to 10%,[1] White Oak was on notice that the Board would be considering whether to permit annual decreases in the rates for small power producers. The Board's initial inclination to allow small power producers to lock into a certain rate does not suggest that, after public comment, it could not make an informed decision to reverse its earlier stance and permit annual decreases in that rate. White Oak has failed to show that it had no opportunity to comment on the proposed changes.

■ White Oak also argues that the Board should have followed "contested case" procedures rather than rulemaking procedures in adopting Rule 4.100 because the rule involved ratemaking. See 3 V.S.A. § 801(b)(2) (contested case is proceeding, "including but not restricted to rate-making and licensing," in which legal rights and duties may be determined only after

---

[1] The Board and CVPSC state that General Order 65 permitted *annual* decreases of 10% or less in the rate paid to small power producers without a "strong factual showing" of need for the adjustment. Although White Oak does not specifically dispute this point, we acknowledge that the Order could be construed to mean that when rates are set at 90% or less than the rates established by that Order for the ensuing year—even as the result of cumulative decreases over more than one year—the adjustment must be supported by a "strong factual showing." Even if we were to adopt the latter construction of General Order 65, we would still conclude that the Order and the final proposed rule were similar, and that the notice of the rule was sufficient.

hearing); *In re Vermont Welfare Rights Organization*, 132 Vt. 622, 626, 326 A.2d 828, 831 (1974) (PSB's general order prescribing when utilities may disconnect service for nonpayment of bills affected rates and therefore constituted improper rulemaking done outside contested case proceeding). We conclude that the Board properly employed rulemaking in adopting Rule 4.104(G).

Beyond the specific procedural rules authorized by the APA, an agency's rulemaking authority must be found in the Legislature's grant of authority. *Welfare Rights*, 132 Vt. at 627, 326 A.2d at 831. As the Department of Public Service points out, this case involves the Board's setting of rates that small power producers may charge utilities rather than retail rates that utilities may charge consumers. The Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 824a-3, and implementing state law, e.g., 30 V.S.A. § 209(a)(8), govern the former. PURPA requires the Federal Energy Regulatory Commission (FERC) to adopt rules regulating utilities' purchase of power from small power producers, and gives each state regulatory body authority to implement such rules. See *In re Vermont Power Exchange,* 159 Vt. 168, 174–75, 617 A.2d 418, 421 (1992).

FERC rules specifically allow the state regulatory body authority to implement PURPA by "'issuance of regulations.'" *Id.* (quoting 18 C.F.R. § 292.401(a).[2] "Under Vermont's implementation of PURPA, the Legislature's grant of power to the PSB is very broad." *Id.* at 176, 617 A.2d at 422. The Board has jurisdiction "in all matters" involving the sale of electricity generated by qualifying facilities. 30 V.S.A. § 209(a)(8). Considering the overall PURPA implementation system, § 209(a)(8) provides the Board with the authority to make rules specifying the methodology for calculating rates for electricity produced by small qualifying facilities. Cf. *In re Vermont Power Exchange*, 159 Vt. at 176, 617 A.2d at 422 (Board has authority to require utilities to pay part of cost of activities of state's purchasing agent).

*Affirmed.*

---

[2] By executive order of May 22, 1992, 18 C.F.R. § 292.401 was removed as part of a general "housecleaning" of obsolete and redundant regulations. 57 Fed. Reg. 21,734. The removal of the section was "merely procedural" in nature and did not alter substantive policy of the Federal Energy Regulatory Commission. See *id.* at 21,733.