## Petition of Vermont Electric Power Producers, Inc.

[683 A.2d 716]

No. 95-441

Present: **Gibson and Morse, JJ., and Meaker, Norton and Teachout, Supr. JJ.,**
**Specially Assigned**

Opinion Filed July 12, 1996

284

*Michael Marks* of *Tarrant, Marks & Gillies*, Montpelier, for Appellant.

*Morris L. Silver* and *Mary C. Marzec*, Law Clerk (On the Brief), Rutland, for Appellee Central Vermont Public Service Corp.

*David J. Mullett* of *Cheney, Brock, Saudek & Mullett, P.C.*, Montpelier, for Appellee Vermont Electric Power Producers, Inc.

*Sheldon M. Katz*, Special Counsel, Montpelier, for Appellee Department of Public Service.

**Gibson, J.** Appellant Vermont Power Exchange, Inc. (VPX) appeals orders of the Public Service Board (PSB) denying VPX's motion to dismiss a petition brought by Vermont Electric Power Producers, Inc. (VEPPI) and denying VPX's motion to disqualify VEPPI's attorney from further proceedings in this matter. The VEPPI petition sought to revoke VPX's designation as the state's purchasing agent for purposes of implementing the federal Public Utility Regulatory Policy Act (PURPA), 16 U.S.C. § 824a-3, and 30 V.S.A. § 209. VPX argues that the PSB erred in: (1) failing to conclude, as a matter of law, that VPX's designation as PURPA purchasing agent is a public franchise that cannot be terminated except for cause; (2) failing to hold an evidentiary hearing on VPX's franchise and other claims; and (3) failing to disqualify VEPPI's attorney from continued participation in these proceedings. We reverse the PSB order denying VPX's motion to disqualify VEPPI's attorney; otherwise, we affirm.

Since 1984, VPX has served as the state's PURPA purchasing agent. In prior decisions, we have reviewed the history and purpose of PURPA and "the unique way in which Vermont has implemented PURPA." *In re Vermont Power Exch.*, 159 Vt. 168, 171-72, 617 A.2d 418, 419 (1992); see *In re Department of Pub. Serv.*, 161 Vt. 97, 102, 632 A.2d 1373, 1376 (1993); *In re East Georgia Cogeneration Ltd. Partnership*, 158 Vt. 525, 528-29, 614 A.2d 799, 801-02 (1992); *In re Department of Pub. Serv.*, 157 Vt. 120, 121-22, 126, 596 A.2d 1303, 1304-05, 1307 (1991); *In re Vicon Recovery Sys.*, 153 Vt. 539, 543-44, 572 A.2d 1355, 1357-58 (1990). Rather than allowing cogenerators and other small power producers to sell electric power directly to utility companies, the PSB, pursuant to the authority granted in 30 V.S.A. § 209(a)(8), promulgated PSB Rule 4.100, which authorized the designation of a single purchasing agent to serve as an intermediary between the power producers and the purchasing utilities.[1] See

---

[1] In late 1989, the PSB amended Rule 4.100 to provide new rules for, among other things, the designation of the PURPA purchasing agent. Under the new rules,

> The Board may by order designate one or more Purchasing Agents. Such an order may define appropriate terms and conditions, including the rights, authority, duties and obligations of the Purchasing Agent, and the authority of the Board to regulate and supervise the Purchasing Agent. In such an Order, the Board may incorporate provisions that reflect its consideration of such factors as:
>
> . . .
> — the general good of the State.
> If the Purchasing Agent accepts such a designation, the Purchasing Agent, and all parties which transact business with the Purchasing Agent, shall, in

Public Service Board Rule 4.104(A); *Department of Pub. Serv.*, 157 Vt. at 121, 126, 596 A.2d at 1304, 1307. VPX has been the only designated Rule 4.100 purchasing agent for the state since Vermont's PURPA compliance system began. *Vermont Power Exch.*, 159 Vt. at 172, 617 A.2d at 420.

Under the terms of the 1984 agreement between the PSB and VPX, VPX's designation as PURPA purchasing agent could be "revoked by the Board at any time without prior notice." In 1987, however, the PSB issued a new designation order for VPX, which stated:

> This designation shall remain in effect *unless terminated* (a) *by the Board for cause (in accordance with contested case procedures)*; (b) by VPX on the ground that there is no reasonable prospect for it to obtain a fair return on its investment or to recover its costs and meet its obligations on an on-going basis; or (c) by the mutual agreement of the Board and VPX.

(Emphasis added.)

Simultaneously with the issuance of the 1987 designation order, the PSB and VPX executed a "Contract for Personal Services" (Contract), under which VPX agreed to perform certain services in addition to those specified for the purchasing agent in Rule 4.100. The Contract provided that, "[u]nless the designation of [VPX] as purchasing agent is sooner terminated, this agreement shall have a term of five years and, unless either party gives 180 days' written notice of its intention not to renew, shall be renewed for a term of five years on each anniversary hereof."

In a letter sent the same day by VPX to PSB's general counsel, VPX expressed its "understanding of various matters regarding the designation of Vermont Power Exchange, Inc. as the Rule 4.100 purchasing agent, and the contract between the Public Service Board and the Exchange." According to VPX:

> The designation permits the Board to terminate the Exchange's status as the Purchasing Agent for cause, in accordance with contested case procedures, as described in

---

the conduct of their business under this Rule, be subject to the terms and conditions of the designation order. Any previous designation shall remain in full force and effect unless and until specifically modified by the Board on a prospective basis.

Rule 4.102(C) (effective Jan. 8, 1990) (hereinafter, 1990 Amendment).

the Board's Rules of Civil Procedure. *Cause, as used in the designation, shall be deemed to include only negligence, neglect of material obligations, fraud, or the inability of the Exchange to perform its material obligations as Purchasing Agent.*

(Emphasis added.) The letter was signed by VPX President Lawrence Copp and countersigned by Thomas Wies, General Counsel to the PSB.

On December 31, 1990, the PSB notified VPX of its intention not to renew the Contract, effective June 30, 1995. VPX did not contest the termination of its Contract with the PSB, nor did the parties attempt to negotiate a new personal services contract.

In April 1994, VEPPI, a nonprofit corporation controlled by power producers and purchasing utilities, petitioned the PSB to revoke VPX's designation as the Rule 4.100 purchasing agent, and to designate VEPPI as purchasing agent, effective July 1, 1995. VPX moved to dismiss the VEPPI petition on two grounds: first, that the PSB's 1987 designation order created a "franchise" as a matter of law, and that such a franchise could be revoked only for "cause"; and second, that designation of VEPPI as purchasing agent would violate the Rule 4.100 requirement of an independent purchasing agent.[2] VPX also moved to disqualify VEPPI's attorney from further representation of VEPPI in this matter, on the ground that the attorney (who also represents VEPPI in the instant appeal) had served as associate general counsel to the PSB at relevant times and in such role had reviewed VPX's contract and designation order and recommended renegotiation of the PSB's relationship with VPX.

In January 1995, the PSB hearing officer, relying on the parties' written submissions and oral argument, but without taking evidence, denied VPX's motion to dismiss. The hearing officer agreed with VPX that the 1987 designation order and the Contract, although executed simultaneously, served different purposes and had different durations. The termination of the Contract therefore did not affect the operation of the designation order. With respect to the designation order, the hearing officer concluded that "[t]he 1987 Board intended that VPX could remain the state's purchasing agent, even without a contract, so long as VPX did not provide cause for termination." The hearing officer further found that "VEPPI has not made any allega-

[2] The Board ultimately ruled unfavorably to VPX's position on this second issue, and VPX has not pursued its claim on appeal.

tions that amount to 'cause,' as VPX would have that term understood here." Nevertheless, the hearing officer held that the 1987 PSB did not have the authority to vest VPX with "a durable form of agency," but rather could act only in a way that did not "restric[t] the 1995 Board from transferring existing power contracts to a different agent." The hearing officer therefore rejected VPX's claim of a franchise terminable only for cause, and held instead that, "[s]ince the Board's Designation Order was based upon a broadly delegated legislative power, the Board can . . . terminate VPX, *even without a showing of dereliction or neglect.*" (Emphasis added.)

VPX sought and obtained interlocutory review by the PSB. In an order filed June 30, 1995, the PSB affirmed the hearing officer's denial of VPX's motion to dismiss. The PSB held that the 1990 Amendment to Rule 4.100 gave the PSB the authority to alter or revoke the 1987 designation order without a showing of "cause." The PSB, however, went on:

> [I]f "cause" is required to revoke VPX's designation, that term must be broadly defined. The term is not limited merely to negligence or fraud. Subject to limitations of explicit contract, the purchasing agent can be replaced if another candidate should appear who can fulfill the function at less cost or with greater effectiveness.
>
> . . . .
>
> We hold that, notwithstanding the limiting language contained in the Designation Document, the Public Service Board, *upon determining that the public interest would thereby be served,* today has authority to appoint an entity other than VPX as purchasing agent.

(Emphasis added.) The present appeal followed.

■ In reviewing a PSB order, we employ "a strong presumption that orders issued by the Public Service Board are valid," *East Georgia Cogeneration Ltd. Partnership*, 158 Vt. at 531, 614 A.2d at 803, and "we give great weight to the Board's interpretations of its own regulations." *Id.* We also accord "great deference to the particular expertise and informed judgment of the Board." *Vermont Power Exch.*, 159 Vt. at 179, 617 A.2d at 424. Where the PSB's findings fairly and reasonably support its conclusions of law, we will uphold the PSB's decision. *In re New England Tel. & Tel. Co.*, 159 Vt. 459, 461-62, 621 A.2d 232, 235 (1993).

## I.

VPX first argues that its 1987 designation as the state's Rule 4.100 purchasing agent created a common-law "franchise," terminable only for cause.

The PSB is a body of special and statutory powers, as to which nothing is presumed in favor of its jurisdiction. *Vermont Power Exch.*, 159 Vt. at 176, 617 A.2d at 422. Consequently, the PSB's powers include only those expressly granted by the Legislature and such incidental powers as are necessarily implied to carry out its express grant. *Id.* Nevertheless, we have also recognized that:

> [u]nder Vermont's implementation of PURPA, the Legislature's grant of power to the PSB is very broad. It grants jurisdiction in all matters respecting the sale of electricity to utilities under PURPA. . . .
>
> . . . [T]he Legislature's authorizations are broad, leaving the PSB to determine the detailed regulation necessary.

*Id.* (internal quotation marks omitted); accord *Department of Pub. Serv.*, 161 Vt. at 102, 632 A.2d at 1376; see also 30 V.S.A. § 209 (general scope of PSB jurisdiction).

In the instant matter, VPX acknowledges that the PSB did not issue the 1987 designation order under the authority of 30 V.S.A. § 231, which establishes the requirements for issuance and revocation of a certificate of public good to operate a business over which the PSB has jurisdiction; and that the PSB did not issue the 1987 designation order following public notice and public hearings conducted to determine whether designation of a PURPA purchasing agent would promote the general good of the state. See 30 V.S.A. § 231(a).[3] Rather, VPX argues that, under the broad legislative grant of 30 V.S.A. § 209(a)(8), the PSB's 1987 designation order, together with the accompanying VPX letter countersigned by PSB's general counsel, vested VPX with a common-law "franchise" as a matter of law. We disagree.

A franchise is a right or privilege conferred by the state to a grantee for the provision of some public purpose. *Delmarva Power & Light Co. v. City of Seaford*, 575 A.2d 1089, 1092 (Del. 1990). A grant

---

[3] We have previously held that "VPX is not a utility." *In re Department of Pub. Serv.*, 157 Vt. 120, 126, 596 A.2d 1303, 1307 (1991). We pass no judgment on whether § 231 proceedings are required for the designation of a PURPA purchasing agent.

of franchise conveys a property interest that is subject to due process protections. *City of Los Angeles v. Los Angeles Gas & Elec. Corp.*, 251 U.S. 32, 39 (1919). Because of its public purpose, any ambiguity regarding the nature of the grant must be construed strictly against the grantee. *Delmarva Power & Light Co.*, 575 A.2d at 1092.

The Vermont Legislature has given the PSB statutory authority to grant a franchise, in the form of a "certificate of public good," but only after a period of public notice and an opportunity for a public hearing to determine whether the award of such a franchise promotes the good of the state. See, e.g., 30 V.S.A. §§ 102 (establishment of public service corporation), 231(a) (operation of public utility), 248 (new gas and electric utilities), 502-504 (cable television systems); see also *In re Telesystems, Corp.*, 143 Vt. 504, 506-07, 469 A.2d 1169, 1170-71 (1983) (setting forth proper procedure to consider application "for a permanent certificate of public good"); *In re Hathorn's Transp. Co.*, 121 Vt. 349, 353, 158 A.2d 464, 467 (1960) ("It is well settled that a certificate of [public good] is a franchise, and is a property right."). But cf. *Delmarva Power & Light Co.*, 575 A.2d at 1096 ("[A] certificate of convenience and necessity . . . in and of itself does not confer or represent an exclusive property right.").

The requirement that a franchise be awarded pursuant to public notice and public hearing ensures that the property right thus created serves the public good. VPX's view — that a public-service franchise can arise without such procedural safeguards, and that the PSB cannot then curtail the franchise without providing procedural safeguards — contravenes the very purpose that public franchises are intended to serve. Absent the statutory requisites for the creation of a public franchise, the PSB was without authority to grant a franchise to VPX by means of the 1987 designation order.

 VPX contends, however, that, by countersigning the June 30, 1987 letter from VPX President Lawrence Copp, PSB General Counsel Thomas Wies created "a binding commitment made on behalf of the Public Service Board itself." We disagree. The powers of the PSB general counsel are expressly defined by statute, 30 V.S.A. § 20, and do not include the power to create public franchises on behalf of the PSB. Actions taken by an employee of a public agency that are beyond the power and authority of that employee will not bind the agency. See *In re McDonald's Corp.*, 146 Vt. 380, 385, 505 A.2d 1202, 1205 (1985) (regional engineer of environmental conservation agency acted beyond his power and authority in rendering opinion concerning possible Act 250 jurisdiction); see also *Federal*

*Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . . And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority."). We see no error in the PSB's denial of VPX's motion to dismiss.

## II.

VPX also argues that the PSB should not have terminated the proceeding without first allowing VPX an opportunity to present further legal and factual arguments to support its franchise claim and its claims to enforceable contract and equitable rights.

■ With respect to the franchise claim, a review of the record indicates that all parties, including VPX, treated VPX's claim as a question of law. VPX presented extensive legal argument in support of its claim before both the hearing officer and the PSB. At no time did VPX request an evidentiary hearing or otherwise indicate that further factual development was necessary to a final disposition of its legal claim.[4] We therefore decline to address VPX's claim of error with respect to the franchise issue. See *White Current Corp. v. Vermont Elec. Coop.*, 158 Vt. 216, 222, 609 A.2d 222, 225 (1992) (Court will not entertain issue not raised in proceedings below or in order appealed from).

VPX contends, however, that, even if it has no protectible franchise interest, it nonetheless has enforceable contract and equitable claims that the PSB cannot adjudicate, either because exclusive jurisdiction over such claims rests with the superior court under 4 V.S.A. § 113, or because due process considerations bar the PSB from adjudicating its own liability.

■ Because we find nothing in the record to suggest that VPX raised a contract or equitable claim before the PSB, we will not reach

---

[4] VPX's argument for dismissal was that "VEPPI's petition fails as a matter of law." In a supplemental memorandum in support of its motion to dismiss, VPX stated: "VPX will produce testimony to contradict some of VEPPI's more egregious factual misstatements if this case is not dismissed on the pleadings. *Evidence, however, is unnecessary.* The Board must grant the motion to dismiss because, *as a matter of law,* it cannot grant the relief requested by VEPPI's petition." (Emphasis added.)

the issue.[5] Although "[i]t is axiomatic that lack of subject matter jurisdiction of the trial court may be raised for the first time on appeal to this Court," *Town of Charlotte v. Richmond*, 158 Vt. 354, 358, 609 A.2d 638, 640 (1992), there is no indication that the PSB exercised, or had the opportunity to exercise, subject-matter jurisdiction over VPX's contract or equitable claims.[6] Consequently, VPX's claim of lack of subject-matter jurisdiction is not ripe for review. See *In re Hill*, 149 Vt. 86, 87-88, 539 A.2d 992, 994 (1987) (claim concerning adequacy of testimony sought at hearing that has not yet been convened is not ripe).

## III.

Finally, VPX argues that the PSB erred in denying its motion to disqualify VEPPI's attorney, David Mullett, who had previously served as associate general counsel to the PSB from September 1988 to September 1989. Our decision today, however, addresses only VPX's claim to a public franchise arising from the 1987 designation order, which was issued before Mr. Mullett joined the PSB. We preface our discussion, therefore, by noting that, although we agree that the PSB erred in refusing to disqualify Mr. Mullett from representing VEPPI in this matter, we find that the error has not tainted the proceedings to date and does not affect the outcome of the instant appeal.

Nevertheless, the PSB's order, which we today affirm in relevant part, leaves open the ultimate disposition of the purchasing-agent designation. The certainty of subsequent proceedings necessitates a final resolution of the propriety of Mr. Mullett's continued participation in those proceedings. Accordingly, we must reach the merits of VPX's claim of error in the PSB's denial of its disqualification motion.

---

[5] The only suggestion that VPX had additional legal rights came from James Volz, representing the Public Service Department. In oral argument before the PSB, Attorney Volz stated: "It is not appropriate to dismiss this case at this time. I think there needs to be a hearing, and I think the decision about what VPX's rights are needs to be decided. I don't agree with Mr. Marks that VPX has a franchise. I think most of his argument hangs on that assertion. And I think VPX probably does have some rights and those rights need to be addressed and they are entitled to due process and they may be entitled to some compensation or remedy. That needs to be determined." At no time, however, did VPX express agreement with Mr. Volz's analysis, request a hearing to resolve its rights, or specify the rights that might be addressed in such a hearing.

[6] The PSB order expressly reserved resolution of VPX's potential legal claims. According to the order, "it may be necessary to determine whether VPX is entitled to compensation for any or all of its assets. The Hearing Officer will hear and resolve any such questions, *should they arise*." (Emphasis added.)

■ We begin by noting that the PSB has all the powers of a trial court in the determination and adjudication of matters over which it has jurisdiction. 30 V.S.A. § 9. A motion to disqualify counsel is a matter that rests within the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of an abuse of discretion. *Derrickson v. Derrickson*, 541 A.2d 149, 152 (D.C. 1988); see *In re Judy Ann's Inc.*, 143 Vt. 228, 233-34, 464 A.2d 752, 755 (1983) (applying abuse-of-discretion standard to review of liquor control commission's ruling on disqualification motion).

■ When the propriety of an attorney-client relationship involving a lawyer previously employed by a governmental agency is raised in the course of litigation, the standard of conduct set forth in DR 9-101(B) of the Vermont Code of Professional Responsibility is a primary source for resolution of the issue. See *Cleary v. District Court*, 704 P.2d 866, 869 (Colo. 1985) (en banc) (DR 9-101(B) recognizes that government attorneys acquire special responsibilities with regard to information and authority entrusted to them). According to DR 9-101(B), "[a] lawyer shall not accept private employment in *a matter* in which the lawyer had *substantial responsibility* while he or she was a public employee." (Emphasis added.)

In this case, the unchallenged evidentiary record indicates that Mr. Mullett, while serving as the PSB's associate general counsel in 1988, was involved in PSB efforts to renegotiate or otherwise redefine VPX's role as PURPA purchasing agent. Specifically, Mr. Mullett reviewed, commented upon, and revised[7] a draft designation order that would have superseded the 1987 designation order at issue here; the 1988 designation order was never issued, however. In addition, on April 28, 1989, Mr. Mullett sent a "Confidential Memorandum" to PSB Chairman Richard Cowart and to PSB members Suzanne Rude[8] and Rosalyn Hunneman concerning a proposed "VPX Certificate of Public Good." In that memorandum, Mr. Mullett urged the PSB not to issue a certificate of public good to VPX. According to Mr. Mullett:

> The issuance of another piece of paper . . . will exacerbate the perception that our relationship with VPX is inconsistent with the Board's responsibilities as a regulatory agency

---

[7] In oral argument before the hearing officer, Mr. Mullett stated that he could not "recall if it was an extensive revision or a small revision; but I urge you to draw any inferences in the manner that is more protective of any public interest."

[8] Mr. Cowart and Ms. Rude are two of the three PSB members who issued the June 30, 1995 order on appeal here.

charged with hearing and deciding contested matters. It is also more likely than not that *VPX itself will use this as another tool to beat the Board over the head with. . . . I* think we need to recognize that . . . *there is at least a fair likelihood that all of this will end in unpleasant litigation.* In view of that, we need to simply stop making more pieces of paper upon which VPX can claim reliance, and hold fast to the view that our future course will be determined through duly noticed rulemaking proceedings.

(Emphasis added.) In the same memorandum, Mr. Mullett also observed that he "was involved in the early drafting of a potential VPX certificate," and that, between his work as general counsel to the Public Service Department and as assistant general counsel to the PSB, he "personally ha[d] spen[t] over 2000 hours on matters directly related to VPX and the small power program."

The PSB concluded, based on its review of the foregoing documents and on Mr. Mullett's representations at oral argument, that the VEPPI petition to revoke the 1987 designation order is not the same "matter," for DR 9-101(B) purposes, as the PSB's 1988-89 effort to redefine VPX's role under that designation order, and that Mr. Mullett did not have "substantial responsibility" in either matter while he was a public employee. We disagree with both conclusions.

### A.

With respect to the word "matter," the American Bar Association, which drafted the Model Code upon which the Vermont Code is based, has observed:

Although a precise definition of "matter" as used in the Disciplinary Rule is difficult to formulate, the term seems to contemplate *a discrete and isolatable transaction or set of transactions between identifiable parties.* Perhaps the scope of the term "matter" may be indicated by examples. The same lawsuit or litigation is the same matter. *The same issue of fact involving the same parties and the same situation or conduct is the same matter.* By contrast, working as a government employee in drafting, enforcing or interpreting government or agency procedures, regulations, or laws, or in briefing abstract principles of law, does not disqualify the lawyer under DR 9-101(B) from subsequent private employment involving the same regulations, procedures, or points

of law; the same "matter" is not involved because there is lacking the discrete, identifiable transactions or conduct involving a particular situation and specific parties.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 342 (1975), *in Formal and Informal Ethics Opinions* 110, 115-16 (1985) (footnotes omitted) (emphasis added). Thus, while the word "matter" may refer to the same litigation, disqualification may also be proper where separate actions arise from the same situation and there is substantial overlap of factual issues. See *General Motors Corp. v. City of New York*, 501 F.2d 639, 650 (2d Cir. 1974) (attorney was involved in same "matter" under DR 9-101(B), where attorney, while employed in Justice Department, prosecuted antitrust action against defendant, then later accepted employment as plaintiff's lawyer in private antitrust action against same defendant for substantially same conduct); cf. *Olivier v. Town of Cumberland*, 540 A.2d 23, 25 (R.I. 1988).

The unchallenged record indicates that Mr. Mullett, as associate general counsel to the PSB in 1988-89, participated in a PSB effort to limit VPX's powers as PURPA purchasing agent and to reestablish PSB authority over the purchasing agent program. In the present matter, Mr. Mullett, as attorney for VEPPI, argues that the PSB has inherent authority to curtail VPX as PURPA purchasing agent and to appoint VEPPI in VPX's place. Both circumstances require the PSB to define the scope of VPX's rights under the 1987 designation order and the scope of the PSB's statutory authority to narrow those rights. The overlap in legal and factual issues between the two efforts is apparent from Mr. Mullett's own words in his 1989 "Confidential Memorandum" to the PSB. In urging the PSB to refrain from issuing a certificate of public good to VPX, Mr. Mullett asserted the likelihood that "VPX itself will use this as another tool to beat the Board over the head with." The phrase "another tool" is a clear reference to the existing documents that established the PSB's relationship with VPX and that are all at issue in the instant appeal. Mr. Mullett further acknowledged that "there is at least a fair likelihood that all of this will end in unpleasant litigation." Again, the phrase "all of this" refers to the entirety of the PSB's relationship with VPX, each component of which is in dispute in the instant appeal.

We conclude that the PSB's 1988-89 renegotiation involved the same "matter" at issue in this case. The PSB, however, looked to the fact that the PSB in 1988-89 did not contemplate the "involuntary revocation" remedy that was employed in this case, and concluded

from the difference in legal strategies that the two efforts were not the same "matter." We do not believe DR 9-101(B) requires such a narrow conception of "matter." As one commentator has noted, "[a] matter that a lawyer is working on is the general collection of facts, issues, blind alleys, options exercised and options that might be considered later, and arguments that are made and those that are held in reserve." C. Wolfram, Modern Legal Ethics § 8.10, at 471 (1986).

The PSB also concluded, for policy reasons, that a broad definition of "matter" for DR 9-101(B) purposes would have a chilling effect on the recruitment of agency lawyers. We acknowledge the validity of such concerns generally, see, e.g., *Reardon v. Marlayne, Inc.*, 416 A.2d 852, 861-62 (N.J. 1980) (raising concern that "a broad approach to disqualification of former government attorneys would adversely affect the ability of government to recruit young professionals"), but we believe such concerns are unwarranted here. Our conclusion that Mr. Mullett's public and private work involves the same "matter" rests on the identity of factual and legal issues presented by the two representations. As such, our construction of the word "matter" does not broaden the sweep of the disciplinary rule.[9]

## B.

The PSB also concluded that Mr. Mullett did not have "substantial responsibility" in this matter while serving at the Department and the PSB. We disagree. According to the ABA:

> As used in DR 9-101(B), "substantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. *It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question. . . .* With a responsibility so strong and compelling that he probably became involved in the investigative or decisional processes, a lawyer upon leaving the government service should not represent another in regard to that matter.

---

[9] Our construction of the word "interest" for purposes of V.R.C.P. 24 intervention, to which the PSB looked for guidance, is inapposite to our decision today. Cf. *Re Chittenden Recycling Servs.*, 162 Vt. 84, 88-89, 643 A.2d 1204, 1207 (1994); *Helm v. Helm*, 139 Vt. 225, 226-27, 424 A.2d 1081, 1082 (1981).

Formal Opinion 342, *supra*, at 118 (footnotes omitted) (emphasis added). Courts interpreting the term in light of Formal Opinion 342 have held that "the prohibition against subsequent employment of a former government official mandated by this disciplinary rule requires *some degree of personal involvement in a prior related matter*." *Cleary*, 704 P.2d at 870 (emphasis added).

. The record demonstrates that Mr. Mullett had substantial responsibility in the VPX matter during his tenure with the PSB. The 1988 draft designation order, which was never issued but which purported to establish guidelines for VPX's operation as purchasing agent under the 1987 designation order, bears Mr. Mullett's initials and handwritten revisions. His 1989 "Confidential Memo" acknowledges that he "was involved in the early drafting of a potential VPX certificate" and that he devoted over two thousand hours to "matters directly related to VPX and the small power program." Finally, in the same memorandum, Mr. Mullett expressly contemplates future litigation of the issues involved in the PSB-VPX relationship, and provides strategic advice to the PSB on how to avoid or manage such litigation.

The PSB concluded, however, that the record was at best ambiguous on the question of Mr. Mullett's role in this matter while at the PSB. According to the PSB, Mr. Mullett's estimate of hours devoted to VPX and PURPA includes his earlier service as general counsel to the Public Service Department, as well as his later service at the PSB, and there is no evidence that his service at the Department involved issues related to the instant litigation. The short answer is that, whatever the ratio of Department hours to PSB hours involved in Mr. Mullett's time estimate, the record demonstrates that he had substantial responsibility in this matter while at the PSB.

The PSB further concluded that the "Confidential Memorandum," which provides the strongest indication of Mr. Mullett's work on this matter, was an unsolicited statement representing Mr. Mullett's personal opinion, and that there is no indication the document had any influence on the PSB's final decision with respect to VPX. As one court has observed, however, "the rule requires substantial responsibility '*in*' some matter, rather than substantial responsibility '*for*' some matter." *Cleary*, 704 P.2d at 870. Accordingly, the proper inquiry is whether Mr. Mullett engaged in "actual, rather than theoretical, conduct," *Olivier*, 540 A.2d at 26, and not whether his conduct had actual, rather than theoretical, influence on the outcome.

## C.

Because we find that Mr. Mullett, while serving as associate general counsel to the PSB, had substantial responsibility in the same matter as is involved in the instant appeal, we conclude that the PSB abused its discretion in failing to grant VPX's disqualification motion. Our disposition of VPX's other claims on appeal, however, demonstrates that Mr. Mullett's representation of VEPPI has not prejudiced VPX's rights up to this time. Nevertheless, the potential for prejudice resulting from Mr. Mullett's prior involvement at the PSB leads us to conclude that Mr. Mullett's further participation in this matter is inappropriate. See *In re County of Bergen*, 633 A.2d 1017, 1021 (N.J. Super. Ct. App. Div. 1993) (prospective disqualification of counsel ordered where record does not disclose any past violations of rights of respective parties). Accordingly, Mr. Mullett is disqualified from representing VEPPI in this or in any matter or proceeding in which VPX has an adversary position with VEPPI.

*The order denying appellant's motion to disqualify appellee VEPPI's attorney is reversed, and Mr. Mullett is disqualified from further representing VEPPI in any matter in which VPX has an adversary position with VEPPI; otherwise, affirmed.*