# New England Educational Training Service, Inc., and John S. Burgess v. Silver Street Partnership and Silver Street Partners and Snowfall, Inc. v. Donald W. Humphreys, Gloria B. Humphreys, New England Educational Training Service, Inc. and John S. Burgess

[528 A.2d 1117]

No. 85-491

Present: Hill, Peck and Hayes,* JJ., and Martin, Supr. J., Specially Assigned

Opinion Filed April 24, 1987

---

* Justice Hayes sat at oral argument, but did not participate in the decision.

*Thomas F. Heilmann, P.C.*, Burlington, for Plaintiff-Appellee.

*Abell, Kenlan, Schwiebert & Hall, P.C.*, Rutland, for Defendant-Appellant.

**Hill, J.** This is an appeal from a judgment entered for plaintiff after the court granted plaintiff's motion for summary judgment to enforce a settlement agreement. We reverse.

The defendant, Silver Street Partnership (Silver Street), is the record owner of a parcel of real estate encumbered by a mortgage in favor of plaintiff, New England Educational Training Service, Inc. (NEET). Silver Street acquired the property in 1983 without notice of an outstanding mortgage to NEET that had been granted by a predecessor in title and misindexed. Not long after defendant acquired the property, it was informed by plaintiff of the outstanding encumbrance. The parties soon entered into informal negotiations aimed at discharge of the mortgage. The parties were unable to settle the dispute at this stage, primarily because of the unwillingness of defendant's predecessors in title, Donald and Gloria Humphreys, to make any contribution to the settlement package. After these negotiations failed, plaintiff filed

this foreclosure action, which was followed by a third-party complaint and numerous cross-claims.

The principal of Silver Street, Jack Heaton, testified that his company retained attorney Rhys Evans to get the problems raised by the dispute and foreclosure action solved, and to that end gave him general authority to conduct the case on behalf of the partnership's rights. Attorney Evans testified that he understood that his general authority to represent defendant's interest in the dispute included the authority to conduct negotiations aimed at settling the dispute. This testimony of Evans was consistent with the testimony of Mr. Heaton on this point.

In addition, attorney Evans testified that in June of 1984, prior to the institution of the foreclosure action, he had been given specific authority to settle the dispute by offering to pay plaintiff $10,000. This offer was in fact made by Evans, but was not accepted by plaintiff. The evidence was otherwise uncontroverted that, subsequent to the $10,000 offer, Evans was never given specific authority to settle the dispute by offering to pay plaintiff any specific amount of money.

The trial court granted summary judgment to plaintiff against defendant in the foreclosure action on the basis of a settlement agreement the court found was made by the parties' attorneys and enforceable against defendant. The defendant argues, among other things, that any agreement reached by the parties' attorneys was unenforceable against it because it had not expressly authorized its attorney to enter into such an agreement. The issue, therefore, is whether, as a matter of law, defendant's attorney could, under these circumstances, bind his client by agreeing to pay plaintiff $60,000 in settlement of plaintiff's claim.[1]

In order to resolve this issue, we must reconcile two competing policies that both find strong support in the law. On one hand, compromises of disputed liability are favored by the courts as a matter of public policy. *Smith* v. *Munro*, 134 Vt. 417, 420, 365 A.2d 259, 262 (1976). On the other hand, the law recognizes the importance of maintaining a client's control over important decisions affecting a client's substantial rights. This principle is

---

[1] Although appellant vigorously challenges the existence of an enforceable settlement agreement, we assume for purposes of this analysis, *without deciding*, that an agreement was reached.

embodied in one of the ethical considerations governing attorney conduct in this state, which provides:

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As typical examples in civil cases, *it is for the client to decide whether he will accept a settlement offer* . . . .

Administrative Orders and Rules, Code of Professional Responsibility, EC 7-7 (emphasis added). In resolving this issue, we are also guided by the law of agency which provides the framework for our analysis.

■ The attorney-client relationship is governed by the law of agency. *Miotk* v. *Rudy*, 4 Kan. App. 2d 296, 300, 605 P.2d 587, 591 (1980); *Kinkaid* v. *Cessna*, 49 Md. App. 18, 23, 430 A.2d 88, 91 (1981); see also *Wells* v. *Foss*, 81 Vt. 15, 18, 69 A. 155, 155-56 (1908) (law of agency applied to question of effect of death of client on authority of his attorney). It is generally recognized that, in the absence of fraud, a client is bound by the appearance, admissions, and actions of counsel acting on behalf of his client. *Barrows* v. *Wilson*, 97 Vt. 26, 27, 121 A. 440, 441 (1923); see also *State* v. *Bailey*, 144 Vt. 86, 102, 475 A.2d 1045, 1055 (1984) ("It is a general rule that trial counsel has authority to act on behalf of his client and to control the procedural aspects of his client's case without his client's express consent."). This rule, however, is limited to control over procedural matters incident to litigation; the client has control over the subject matter of litigation. *Vail* v. *Conant*, 15 Vt. 314, 321 (1843) ("[T]he powers of the attorney are confined to the prosecution or defence of the suit, and . . . he has no power to compromise and agree upon terms and conditions of settlement."); see also *Giles* v. *Russell*, 222 Kan. 629, 635, 567 P.2d 845, 850 (1977) ("[W]hile the attorney has exclusive control over procedural matters incident to litigation, the client has exclusive control over the subject matter of litigation."). In order to preserve the client's control over the subject matter of litigation, we have recognized that "an attorney has no authority, without the permission of his client, to dismiss a case with prejudice or do any act that will have the effect of irrevocably renouncing or bar-

ring his client's right of action." *In re J.H.*, 144 Vt. 1, 4, 470 A.2d 1182, 1184 (1983) (citing *Sheffer v. B. B. Perkins & Co.*, 83 Vt. 185, 75 A. 6 (1910), and *Vail v. Conant*, 15 Vt. 314 (1843)).

Plaintiff's argument is that the evidence supports the conclusion that defendant's counsel had permission, or authority, from his client to enter into the disputed settlement agreement. There was absolutely no evidence, however, that attorney Evans was, at any point in the course of the negotiations, expressly authorized to agree to pay plaintiff $60,000 in settlement of the foreclosure action. Thus plaintiff's argument, and the trial court's decision,[2] can only be sustained if the evidence supports the conclusion that defendant's counsel had implied or apparent authority to settle the case for this amount.

Implied authority is "actual authority circumstantially proven from the facts and circumstances attending the transaction in question." *Stevens v. Frost*, 140 Me. 1, 10, 32 A.2d 164, 168 (1943). Such authority may be "implied or inferred from the words used, from customs and from the relations of the parties." Restatement (Second) of Agency § 7, comment c (1958). Plaintiff's argument is that retention of an attorney with express authority to negotiate a settlement, which defendant's attorney had in this case, combined with an extensive history of negotiations, implies the power to reach a binding agreement. While this Court has never addressed this precise question, other courts have concluded that an attorney does not have implied authority to reach a binding agreement under these circumstances. See, e.g., *Miller*

---

[2] The trial court made no findings on the issue of authority of defendant's attorney to settle the case. In its oral decision, however, it relied on *Spaulding v. Cahill*, 146 Vt. 386, 505 A.2d 1186 (1985), for the proposition that "when attorneys arrive at a settlement agreement on behalf of their clients, parties to a dispute, that such a settlement agreement must be enforced." Judging from this statement, which is the only reference by the court to the issue of authority, it appears the court was relying on *Spaulding* for the rule that an attorney has implied authority to bind his client to a settlement agreement from the fact he has been retained to represent a party generally. The *Spaulding* case is inapposite, however, because it involved a settlement agreement entered into by two parties to a dispute, not their attorneys, so that no agency issue was involved. *Id.* at 388, 505 A.2d at 1187. Notwithstanding this defect in the trial court's analysis of the authority issue, we will examine the record in order to determine if the decision is supportable under any theory of authority. See *Circus Studios, Ltd. v. Tufo*, 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984) ("This Court will affirm a judgment which is correct even if the grounds stated in support of it are erroneous.").

v. *Mueller*, 28 Md. App. 141, 147, 343 A.2d 922, 926 (1975) (the mere retention of an attorney to negotiate the terms of a real estate transaction does not confer upon the attorney the implied authority to make a binding contract of sale); *Johnson* v. *Tesky*, 57 Or. App. 133, 136-37, 643 P.2d 1344, 1347 (1982) (employment of attorney, along with express authority to negotiate a settlement, does not confer authority to enter binding settlement agreement).

■ We think that these decisions are specialized applications of the general rule, supported by the weight of the authority, that an attorney has no authority to compromise or settle his client's claim without his client's permission. *In re J.H.*, 144 Vt. at 4, 470 A.2d at 1184; *Pettengill* v. *New Hampshire Insurance Co.*, 129 Vt. 23, 30, 270 A.2d 883, 888 (1970) ("[A]n attorney, without special authority, has no power to bind his client by a compromise agreement of less than the full amount due."); see also *Reimer* v. *Davis*, 224 Kan. 225, 229, 580 P.2d 81, 85 (1978) (An attorney has no authority to compromise or settle his client's claim without his client's approval.); Annot., 30 A.L.R.2d 944, 945-49 (1953); 7 Am. Jur. 2d *Attorneys at Law* § 158. An attorney, once employed, commonly has the power to negotiate with opposing counsel regarding possible settlement of the dispute. The authority to negotiate with opposing counsel is appropriately characterized as one of the implied powers incident to an attorney's general authority to conduct the procedural aspects of a client's case. Nevertheless, an important distinction must be drawn between an attorney's authority to conduct negotiations and his authority to bind his client to a settlement agreement without express permission. The latter is within the ambit of the subject matter of litigation, which remains at all times within the control of the client, and cannot be implied from authority to conduct negotiations. Accordingly, we hold that retention of an attorney to represent one's interest in a dispute, with instructions to conduct settlement negotiations, without more, does not confer implied authority to reach an agreement binding on a client.

Plaintiff's argument that our holding will undercut the policy in favor of settlement agreements is unpersuasive. First, the incentives for all parties to settle litigation are not affected by our holding today. While our holding will restrict the enforceability of unauthorized agreements against clients, it does not follow that settlement will be discouraged. Rather, the primary effect of this

decision will be to "encourage attorneys negotiating settlements to confirm their, or their opponent's, actual extent of authority to bind their respective clients." *Johnson*, 57 Or. App. at 137 n.2, 643 P.2d at 1347 n.2. More importantly, the client's control over settlement decisions is preserved.

■ Plaintiff also makes passing reference to apparent authority as a theory that would support the trial court's decision. Apparent authority, unlike express or implied authority, does not derive from the manifestation of consent by a principal to an agent of the agent's power to affect the legal relations of the principal. Rather, it derives from conduct of the principal, communicated or manifested to the third party, which reasonably leads the third party to rely on the agent's authority.

> Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent. Apparent authority also may arise when the principal knowingly permits the agent to act in a certain manner as if he were authorized. The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable.

*Miller*, 28 Md. App. at 148, 343 A.2d at 926; see also Restatement (Second) of Agency § 27, comment a.

■ The fatal flaw with plaintiff's apparent authority argument is that there is absolutely no evidence in the record of conduct on the part of the principal (Silver Street) which could reasonably have been relied on by plaintiff as a manifestation of the authority of its agent to conclude a binding settlement agreement. As noted above, retention of an attorney, with instructions to negotiate toward settlement, does not create any implied authority to enter into a binding agreement. Similarly, such action by a principal could not be reasonably relied on as the basis for apparent authority to settle the case. *Johnson*, 57 Or. App. at 137-38, 643 P.2d at 1347. Although defendant did give its attorney, at an earlier point in the negotiations, express authority to agree to pay $10,000 in settlement of plaintiff's claim, plaintiff could not have reasonably relied on this act as a a manifestation of counsel's authority to settle for $60,000. Furthermore, plaintiff's argument that "the entire framework of this case proceeding in an atmo-

sphere of offers being made by Attorney Evans on behalf of [defendant] to settle the case" is no aid to its position: An "atmosphere of offers" is no substitute for conduct on the part of the principal which can support a finding of apparent authority to settle. Plaintiff has pointed to no other conduct on the part of the principal to support its argument.

Since there is insufficient evidence in the record to support the conclusion, under any legal theory, that defendant's attorney had authority to bind his client to a settlement agreement, the judgment must be reversed.

*Reversed and remanded for further proceedings consistent with the views expressed in this opinion.*