**CITY OF BURLINGTON, Plaintiff,**

v.

**ZURN INDUSTRIES, INC., Zurn EPC. Services, Inc., Aalborg Industries Inc., and Hartford Steam Boiler Inspection and Insurance Co., Defendants.**

**Civil Action No. 1:99–CV–404.**

United States District Court,
D. Vermont.

March 21, 2001.

---

Kevin John Coyle, McNeil, Leddy & Sheahan, P.C., Burlington, VT, for City of Burlington.

Richard Thomas Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, Seth Price, Gina Vitiello, Shapiro, Fussell, Wedge, Smotherman, Martin & Price, LLP, Atlanta, GA, for Zurn Industries, Inc., Zurn EPC Services, Inc.

Richard Thomas Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, for Aalborg Industries, Inc.

Ernest J. Mattei, Kathleen D. Monnes, Day, Berry & Howard, Hartford, CT, James W. Spink, Elizabeth Hawkins Miller, Spink & Miller, PLC, Burlington, VT, for the Hartford Steam Boiler Inspection and Insurance Co.

## Opinion and Order

(Papers 46 and 49)

MURTHA, Chief Judge.

The City of Burlington (City) has brought this action alleging that Defendants Zurn Industries, Inc., Zurn EPC Services, Inc., Aalborg Industries, Inc. (collectively Zurn) and Hartford Steam Boiler Inspection and Insurance Company (Hartford) breached their contract with the City when Defendants sold, installed and certified for inspection a faulty economizer boiler system in the City's wood-fired steam generator. The City also contends that Zurn acted negligently in performing under the contract and in subsequently failing to discover the boiler's defects. Finally, it contends that, after an inspection of the boiler, Zurn and Hartford negligently misrepresented that the boiler complied with the ASME Boiler and Pressure Vessel Code.

Defendant Zurn Industries, Inc. moves for summary judgment pursuant to Fed. R.Civ.P. 56(c), asserting that under the terms reached in earlier negotiations, the City released Zurn from all future claims involving "any equipment" related to the boiler. Zurn also argues that the City's claims are barred by a contract provision that required any breach of contract claims be brought within 18 months of the completion and initial firing of the boiler. Zurn further argues that because the City

was on notice of the boiler problems by 1988, its 1999 claims are barred by the state statute of limitations. *See* 12 V.S.A. § 511. Finally, Zurn contends that the City's negligence claims are barred because Vermont law does not permit negligence claims where the alleged injury is purely economic.

In its cross motion for summary judgment, the City requests that Zurn's affirmative defense of release from liability as the result of Burlington Electric Department's Performance Supervisor Thomas Carr's assurances should be dismissed as a matter of law.

For the reasons set forth below, Zurn's motion for summary judgment is DENIED in part and GRANTED in part. The City's cross motion is DENIED.

### Background

In 1982, the City and BED finalized a purchase order agreement (# 102) with Zurn to design, manufacture and erect an economizer boiler for the City's wood-fired steam generator, the McNeil Station. The economizer consisted of metal tubing which Zurn welded together to create the boiler. Zurn completed the work in February 1984 and the boiler began operating in March. The agreement specified that all causes of action arising as a result of the contract must be brought within 18 months of the completion of the erection and initial firing of the boiler.

Between September 1984 and April 1986, Zurn and the City worked through a number of outstanding issues relating to each party's performance requirements under the contract. After negotiations, the parties apparently resolved these issues. On April 23, 1986, BED's Production Superintendent, Thomas Carr, provided Zurn with a letter which stated:

> In consideration of the concessions given by Zurn Industries in this matter, as mutually agreed to in our meeting on 1 April 1986, B.E.D. releases Zurn from any further obligation to bear costs associated with the malfunction or failure to perform of any equipment furnished by Zurn on B.E.D. Purchase Order # 102.

Paper 47 at 4.

In February 1987, the economizer leaked for the first time in the area where the tubes had been welded. A second leak, again at a weld, occurred in July 1988. John Irving, BED's plant manager, reported the leaks in the station's monthly operating reports. Irving noted that he believed the leaks were the result of weld failures attributable to faulty installation. Thereafter, the weld leaks apparently began to increase in frequency with 27 weld failures occurring between April 1995 and March 1999. BED performed a radiographic examination of the welds and discovered that the leaks resulted from a lack of full weld penetration. All 516 welds in the boiler's lower section revealed a lack of full penetration.

### Analysis

I. *Summary Judgment Standard*

Summary judgment is appropriate if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has demonstrated the absence of any genuine issue of

material fact, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). The court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. *Breach of Contract*

Neither party disputes the viability of the contract or the failure of the welds. Rather Zurn asserts the City executed a release that effectively prevented the City from bringing any future suit against Zurn relating to its performance under the contract. In the alternative, Zurn argues that either the contractual time limitation on litigation or the state statute of limitations on contract actions, bars the suit.

### A. *The Release*

The City argues that Zurn's release defense is ineffective because BED's board never authorized Carr to release Zurn from future obligations to bear costs associated with the malfunction or failure to perform of any equipment furnished by Zurn on BED Purchase Order # 102. On this basis, the City contends the Court should dismiss the defense. Zurn contests the City's assertion, claiming the facts and circumstances surrounding Carr's actions indicated that he had the authority to sign a release on behalf of BED and, therefore, because the City has released Zurn from liability, the Court should grant summary judgment on its behalf.

■ "As a general rule, the knowledge of an agent acting within the scope of his or her authority is chargeable to the principal, regardless of whether that knowledge is actually communicated." *Sawyer v. Crowell,* 151 Vt. 287, 559 A.2d 687, 690 (1989). Actual authority may be express or implied. Implied authority is "actual

authority circumstantially proven from the facts and circumstances attending the transaction in question." *New England Educational Training Servs., Inc. v. Silver St. P'ship,* 148 Vt. 99, 528 A.2d 1117, 1119 (1987) (citation omitted). "Such authority may be implied or inferred from the words used, from customs and from the relations of the parties." *Id.*

■ Generally, a municipal corporation, such as BED, is not bound by a contract (in this instance a release) executed by one of its employees, however, unless it had granted the employee the authority to enter into the contract on the corporation's behalf. *See, e.g., Petition of Vermont Elec. Power Prods., Inc.,* 165 Vt. 282, 683 A.2d 716, 720 (1996) ("Actions taken by an employee of a public agency that are beyond the power and authority of that employee will not bind the agency.").

■ Moreover, the party dealing with an agent of a municipal corporation carries the burden of ascertaining whether the agent is within the limitation of his or her authority. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

The City contends that Zurn errs in attempting to apply the law of agency in the private context to a municipality which enjoys a different set of rules. It claims that under the City's Charter, only BED's Board of Commissioners had the authority to execute a release and no evidence exists in the minutes of BED board meetings or elsewhere to indicate BED had ever given approval to Thomas Carr to sign a release with Zurn waiving the City's right to bring legal claims in connection with the McNeil station. It further claims that because the

Charter does not expressly provide a grant of authority to Carr as production superintendent, Carr could not have possessed the authority to execute the release. Thus, the City argues, Carr acted outside the bounds of his authority in issuing the release to Zurn.

■ Zurn has adduced no evidence to indicate that Carr may have had the actual authority to issue the release. The law clearly presumes that Zurn, in dealing with a municipal entity, was obligated to discover whether the municipality had granted Carr the authority to enter into the release on its behalf. Zurn also has not shown that the BED board expressly authorized Carr to issue the release. Therefore, the release cannot be valid under a theory of actual authority.

■ Carr may have manifested apparent authority [1], however, to release Zurn from future liability. "A public authority is not bound by a declaration of its agent unless it manifestly appears that the agent was acting within the scope of his authority, or that he had been held out as having authority...." *Hawkins v. United States,* 96 U.S. 689, 691, 24 L.Ed. 607, 608 (1877). Carr clearly held himself out as having the authority to engage in contractual matters for BED. Indeed, he signed the initial purchase order agreement, executed changes to the order, and negotiated the contract's settlement.

Moreover, the City has not challenged the validity of the original contract on the basis of Carr's lack of authority. Although the City points to the absence of a direct grant of authority to BED's Superintendent in the City Charter, such an omission does not by necessity indicate that the Superintendent was not vested with the authority to contract with Zurn. Without facts to explain BED's decision-making process or to determine the nature and degree of power it had delegated to Carr in its dealings with Zurn, it is impossible to establish whether Carr acted within the scope of his authority in issuing the release.

■ Even though Vermont law requires that "all persons dealing with [municipal officers] are bound to know the extent and limitation," *Town of New Haven v. Weston,* 87 Vt. 7, 86 A. 996, 999 (1913), of their authority, where the municipal corporation acts similarly to a private corporation in ordinary business affairs, the law does not absolutely preclude enforcement of the municipality's contract regardless of the officer's authority. "[W]here the infirmity in the contract lies merely in the lack of authority of the one who assumes to make it for the municipality, and the latter has received and retains the benefit of the contract, the law will not refuse relief to the other party, at least to the extent of the benefit conferred." *Id.; see also Cent. Vermont Pub. Serv. Corp. v. Town of Springfield,* 135 Vt. 436, 379 A.2d 677, 680 (1977) ("[B]etter rule is that when a municipality has accepted benefits wrought by performance of a contract invalid for failure to satisfy some formality in its execution, but with the apparent authority of the municipality's authority, it ... should not be allowed to recover any funds which have been paid.").

BED issued the release only after Carr engaged in extensive negotiations with Zurn related to the completion of performance by both parties. Apparently, given the nature of negotiations, both parties

1. The elements of a claim of apparent authority are: (1) the principal must, by words or conduct, create appearance of authority in agent; and (2) the third party must reasonably rely on that appearance of authority. *FDIC v. Providence College,* 115 F.3d 136, 140 (2d Cir.1997).

made concessions and accepted benefits in exchange. In fact, the release specifically states that it was executed in exchange for unspecified concessions from Zurn. Therefore, it is probable that BED benefitted, in some manner, by agreeing to sign the release.

■ Because "[a] contract enforceable against a municipal corporation may be proved by circumstances, acts, conduct, and sayings of municipal officers having authority to bind the corporation[,]" *Town Dist. of Hardwick v. Town Dist. of Wolcott*, 78 Vt. 23, 61 A. 471, 471 (1905), whether the release is legally valid remains a genuine issue of material fact best left to the fact finder that cannot be decided as a matter of law.[2]

■ Finally, the City urges the Court to find that if the release is valid, it releases Zurn only from the City's breach of contract claim, not from its negligence claims. "[C]ontractual provisions limiting the tort liability of parties to a contract are not per se unconscionable." *Loli of Vermont, Inc. v. Stefandl*, 1996 WL 192004, *2 (D.Vt. Jan.9, 1996) (citing *Colgan v. Agway, Inc.*, 150 Vt. 373, 553 A.2d 143 (1988)). A disclaimer of liability, however, is construed strictly against the party relying on it. *Id.* The language of the provision must be specific enough to unmistakably reflect the intent of both parties in order to relieve the defendant of possible liability. *Colgan*, 553 A.2d at 145. The question of the adequacy of the provision is a matter of law for the court to decide. *Cf. Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 556 A.2d 81 (1988).

■ The City claims that the language of the release "fails to include any hint that claims sounding in negligence were intended to fall within its scope." Paper 50 at 10. To the contrary, the release, executed after lengthy negotiations and created by the Plaintiff's putative agent over a year after the parties had agreed on concessions necessary before executing the release, speaks directly of relieving Zurn "from any further obligation to bear costs associated with the malfunction or failure to perform of any equipment." Paper 47 at 4. The meaning of this phrase, though broad, is abundantly clear and it supports but one interpretation. The absence of the word "negligence" has no bearing on the phrase's clarity. Therefore, the release would be valid as to all of the City's claims.

### B. *Time Limitations*

Zurn contends that the City knew, or should have known, that the economizer boiler leaked by 1988 and thus was obligated to bring its claims either within the 18–month provision contained in the purchase order or, at the very least, within Vermont's six-year statute of limitation governing civil actions. *See* 12 V.S.A. § 511. The City asserts that it was unaware of the degree of the problem until 1994 when the leaks reached "epidemic proportions" and, because it claims that the contractual limitation does not apply where the contract does not involve the sale of goods, the applicable six-year statute of limitation

---

**2.** The City also claims that Zurn has failed to allege that it relied, reasonably or otherwise, to its detriment on Carr's apparent authority and, thus, even if apparent authority could be legitimately asserted under these circumstances, Zurn's claim fails to set forth an essential element and cannot stand. Zurn alleges that it engaged in lengthy negotiations with BED in order to terminate its performance under the contract. Although it has not specifically stated what benefits it conferred upon BED in order to receive the release, Zurn has alleged sufficient facts to show that it relied on the release in providing BED with concessions prior to BED's execution of the release.

did not begin to run until 1994.[3]

■ The question of whether goods or services predominate in a contract is one of fact. When there is no controversy regarding the contract's provisions, however, the Court may resolve the issue as a matter of law. *Allmand Assocs., Inc. v. Hercules Inc.*, 960 F.Supp. 1216, 1223 (E.D.Mich.1997). In this instance, the parties dispute the scope and validity of the release. Therefore, because a genuine issue of material fact regarding the contract remains, it is inappropriate for the Court to decide as a matter of law whether the contract is governed by Vermont's Uniform Commercial Code.

■ Assuming without deciding, however, that the contract is predominately one for the sale of services, the issue of when the Plaintiff discovered "facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery," *Vermont Agency of Natural Res. v. Towns*, 168 Vt. 449, 724 A.2d 1022, 1024 (1998), is also a question of fact, not of law. *Id.* A grant of summary judgment is clearly unwarranted given these outstanding material factual issues.

## C. *Negligence Claims*

The City alleges that Zurn acted negligently when it breached its duty to perform under the contract and to adequately inspect its work by, among other things, failing to perform "in a workmanlike man-

ner, and according to industry standards." Paper 27 at 4. It further alleges that Zurn (in cooperation with Hartford), in certifying that the boiler's "chemical and physical properties" met the requirements of the ASME Boiler and Pressure Vessel Code, negligently misrepresented the actual status of the boiler.

Zurn claims that the statute of limitations has run on the City's negligence claims as well as its breach of contract claim. In the alternative, Zurn argues that the City's "general negligence claim" is barred as a matter of law.

■ As stated above, whether or not the Plaintiff's claims would be time barred is an issue for the finder of fact. The issue of whether the City's losses are recoverable under a negligence theory, however, is a matter of law to be decided by the Court. Vermont's " '[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm,' which does not include economic loss." *Gus' Catering, Inc. v. Menusoft Systems*, 762 A.2d 804, 807 (Vt.2000) (quoting *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 665 A.2d 39, 42 (1995)).

■ The City does not allege that any injury resulted from the boiler leaks other than to the boiler itself. It does not allege that the boiler leaks caused anyone to sustain bodily injury or that the leaks contributed to the damage of any other property. *See, e.g.*, Restatement (Second) of

---

**3.** In an odd conflation of its claims, the City asserts that it could not have discovered the problems with the boiler within the applicable time period because Zurn fraudulently concealed "the fact that all of the 518 shop welds in the lower section of the economizer, and a large percentage of the shop welds in the upper two sections, lacked full penetration." The City, however, has not raised a claim of fraudulent concealment in its complaint. It cannot, in the pleadings, convert a negligent misrepresentation claim into an excuse for failing to timely file its claims. *Cf. Reisner v. Gen'l Motors Corp.*, 671 F.2d 91, 93 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982). Thus, the Court does not consider this argument in deciding the time limitations issues.

Torts § 7(3) (1965) (physical harm means physical impairment of chattels). Therefore, because the City's negligence claims are based solely on the improper installation and construction of the boiler, the damages are strictly economic and are not recoverable under a negligence theory. *See Gus' Catering*, 762 A.2d at 807 (citing Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966) (defining economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— without any claim of personal injury or damage to other property.")).

### Conclusion

The questions of whether BED's production superintendent, Thomas Carr, had apparent authority to release Zurn from future liability and when BED discovered the leaks are genuine issues of material fact to be decided by the fact finder. Therefore, Zurn's motion for summary judgment on these issues is DENIED. Moreover, the City's motion for summary judgment on the release as an affirmative defense is also DENIED. Finally, although the release would appear to be a waiver of the City's negligence claims, Zurn's motion for summary judgment as to the City's negligence claim, negligent inspection claim, and negligent misrepresentation claim is GRANTED because of the City's failure to allege a non-economic injury.

SO ORDERED.