In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

This Document Relates to Town of Hartland v. Amerada Hess Corp., No. 04 Civ. 2072

No. 1:00–189.
MDL 1358(SAS).

United States District Court,
S.D. New York.

May 12, 2005.

Susan Millington Campbell, Robb W. Patryk, Hughes Hubbard & Reed LLP, New York, NY, for Irving Oil Corp. and Irving Oil Terminals, Inc.

Robert Gordon, C. Sanders McNew, Stanley N. Alpert, Weitz & Luxenberg, P.C., New York, NY, for Town of Hartland and Liaison Counsel for Plaintiffs.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery LLP, New York, NY, Liaison Counsel for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

The Town of Hartland ("Town") brings this action to recover for the contamination of its groundwater with the gasoline additive methyl tertiary butyl ether ("MTBE"). In its Fourth Amended Complaint, the Town alleges, *inter alia*, that "in 1997 a truck owned and operated by Defendant Irving Oil negligently spilled a substantial amount of gasoline in the town of Hartland, Vermont which resulted in the discharge of MTBE contamination into drinking water supplies."[1] Defendants Irving Oil Corporation ("Irving Oil") and Irving Oil Terminals, Inc. (collectively, "Irving Oil Defendants"), now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on a release purportedly executed by the Town, which discharged Irving Oil from liability for any and all claims arising out of a rollover accident on July 24, 1997.[2] For the reasons set forth below, Irving Oil's motion for summary judgment is denied.

1. Town of Hartland Fourth Amended Complaint ("Hartland Compl.") ¶ 113.

2. The Irving Oil Defendants also moved for dismissal of the Town's claims pursuant to Rule 12(b)(6). That part of the motion was addressed in an Opinion and Order dated April 20, 2005. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21–88, MDL 1358, 2005 WL 906322, at *60–61 (S.D.N.Y. Apr.20, 2005).

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are either undisputed or taken in the light most favorable to the non-moving party.

On July 24, 1997, an Irving Oil fuel delivery truck driving north on Quechee Road in Hartland, Vermont drove off the road and rolled over into a ditch.[3] The driver, Edwin Rice, states that when he exited the overturned vehicle, he discovered that gasoline was leaking from the pressure seal around the storage compartment cover.[4] He stopped the leak by resetting the latch and restoring the pressure seal.[5] Rice claims that the road collapsed under the right side tires of the truck when he steered to the side to give an oncoming vehicle additional room to pass; he asserts that the collapsed pavement appeared to have been patched with tar following the installation of a culvert or tunnel underneath the road, and that the ditch appeared to have been dug recently.[6] The Town disputes that the road was damaged in any way prior to the accident.[7]

The Hartland Volunteer Fire Department Rescue Squad, Inc. ("Fire Department"), responded to the accident by dispatching emergency personnel and equipment to the site.[8] The Fire Department is an independent, not-for-profit corporation that provides fire prevention, emergency, and medical services to the Town of Hartland.[9]

Vermont's Agency of Natural Resources visited the spill site and determined that the "local water supply [was] not at risk" as a result of the spill.[10] The Agency estimated that a total of forty to fifty gallons of fuel had been released into the ground.[11]

On August 13, 1997, the Fire Department billed Irving Oil $5,833 for six hours of equipment usage and labor charges associated with responding to the accident.[12] Irving Oil's local manager, Lucien Beam, objected to the charges as excessive and requested a meeting with the Town's Board of Selectmen.[13] Mr. Beam claims that he informed the Town that the charges were unreasonable because the Town had created the unsafe road conditions that caused the accident.[14] He also

3. *See* Statement of Material Facts in Support of Irving Oil Defendants' Motion to Dismiss for Failure to State a Claim or for Summary Judgment ("Irving 56.1 Stmt.") ¶ 1; Revised Rule 56.1 Counter–Statement of Material Disputed Facts ("Town 56.1 Stmt.") ¶ 1.

4. *See* Irving 56.1 Stmt. ¶ 9; Affidavit of Edwin Rice, Irving Oil Driver ("Rice Aff.") ¶ 10.

5. *See* Irving 56.1 Stmt. ¶ 10; Rice Aff. ¶ 12.

6. *See* Irving 56.1 Stmt. ¶¶ 6–8; Rice Aff. ¶¶ 15–16.

7. *See* Town 56.1 Stmt. ¶¶ 6–8; Declaration of Raymond Durphey, Member of Town of Hartland Highway Crew ¶ 4.

8. *See* Town 56.1 Stmt. ¶ 28.

9. *See id.* ¶ 27; Declaration of Robert Stacey, Town Manager for Town of Hartland, Vermont ("Stacey Decl.") ¶ 4.

10. Agency of Natural Resources Complaint/Spill Report, Complaint # HMM97–286 ("Spill Rep."), Ex. 1 to Affidavit of Lucien Beam, Manager of West Lebanon office of Irving Oil Corp. ("Beam Aff."). *See also* Irving 56.1 Stmt. ¶ 12; Town 56.1 Stmt. ¶ 12.

11. *See* Irving 56.1 Stmt. ¶ 13; Town 56.1 Stmt. ¶ 13; Spill Rep.

12. *See* Irving 56.1 Stmt. ¶ 14; Town 56.1 Stmt. ¶ 14; Bill from Hartland Volunteer Fire Department, Ex. 2 to Beam Aff.

13. *See* Irving 56.1 Stmt. ¶ 15; Town 56.1 Stmt. ¶ 15; Letter from Lucien Beam to Fire Department Secretary Cooper, dated March 9, 1998, Ex. 4 to Beam Aff.

14. *See* Irving 56.1 Stmt. ¶ 16; Beam Aff. ¶ 10.

contends that he notified the Town that it was his understanding that the Hartland firefighters had spread the gasoline over a greater area when they applied water and foam to the spill, making cleanup more difficult.[15]

Negotiations took place among Town Manager Stacey, Town Selectman Campbell, Town Attorney Welch, Fire Chief Cote, Fire Secretary Cooper, Mr. Beam, and other Irving Oil representatives.[16] On December 3, 1998, Irving Oil paid the Fire Department one half of the charges, or $2,916.50, in return for a release of any further liability.[17] The check is marked as received by Town Selectman Campbell.[18]

In a March 31, 1999 letter to Irving Oil, Town Selectman Campbell disclosed that the Town had engaged its attorney, Peter Welch, to review the Release of All Claims proposed by Irving Oil.[19] The letter further informed Irving Oil that Town Attorney Welch "did not feel that it was appropriate for the Town of Hartland and the Hartland Volunteer Fire Dept. to sign a release without Irving Oil signing an equivalent release. [Welch] drafted a pair of General Releases for the Hartland Volunteer Fire Dept. and Irving Oil to sign."[20] Enclosed with the letter was "a copy of the release which Mark Cote, Fire Chief, ha[d] signed" on January 10, 1999.[21] The signature line reads "Fire Chief, Hartland Volunteer Fire Department."[22]

The release states:

KNOW YE, THAT Town of Hartland and Hartland Volunteer Fire Department, for and in consideration of the sum of Two Thousand Nine Hundred Sixteen Dollars and Fifty Cents ($2,916.50) lawful money of the United States, from Irving Oil Corporation, the receipt whereof is hereby acknowledged, have remised, released, and forever discharged and by these presents does for itself and its successors and assigns, remise, release and forever discharge the said Irving Oil Corporation their successors and assigns, of and from any and all manner of action and actions, cause and causes of action, suits, damages, judgments, executions, claims for personal injuries, property damage and demands whatsoever, in law or in equity, which it ever had, now have or which its successors or assigns hereafter can, shall, or may have against Irving Oil Corporation, for, upon, or by reason of, any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents and particularly, but without in any manner limiting the foregoing, for an occurrence on July 24, 1997 in Hartland, Vermont.[23]

Town Selectman Campbell witnessed the signature.[24]

---

15. *See* Irving 56.1 Stmt. ¶ 17; Beam Aff. ¶ 11.

16. *See* Irving 56.1 Stmt. ¶ 20 (indicating that meeting was held between representative of Irving Oil, the Town Board of Selectmen, and the Fire Department); Town 56.1 Stmt. ¶ 33 (naming individuals).

17. *See* Check from Irving Oil made payable to the "Hartland Volunteer Fire Dept.," Ex. 7 to Beam Aff.

18. *See* Back of Check from Irving Oil made payable to the "Hartland Volunteer Fire Dept.," Ex. 8 to Beam Aff.

19. *See* Irving 56.1 Stmt. ¶ 21; Town 56.1 Stmt. ¶ 21; Letter from Town Selectman Campbell to Lucien Beam, dated March 31, 1999 ("3/31/99 Letter"), Ex. 10 to Beam Aff.

20. 3/31/99 Letter.

21. *Id.*

22. *See* General Release attached to 3/31/99 Letter, Ex. 10 to Beam Aff.

23. *Id.*

24. *See id.*

Irving Oil did not immediately execute the reciprocal release. On November 12, 1999, Town Attorney Welch wrote to Mr. Beam "to finalize the agreement [he] under[stood] [Irving Oil] and the Town Fire Department reached for the incident on July 24, 1997." [25] Town Attorney Welch again enclosed "reciprocal releases with respect to that incident whereby the Town and its fire department release Irving Oil, and Irving Oil likewise releases the Town for any claims that may arise out of that incident." [26] A "duly authorized officer and agent" of Irving Oil signed the reciprocal release on March 2, 2000.[27]

## II. LEGAL STANDARD

Summary judgment is appropriate if the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [28] "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.' " [29] "A fact is material for these purposes if it 'might affect the outcome of the suit under the governing law.' " [30]

The movant has the burden of demonstrating that no genuine issue of material fact exists.[31] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of materi-

al fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," [32] and it must "come forward with 'specific facts showing that there is a genuine issue for trial.' " [33] In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor.[34]

## III. DISCUSSION

The Irving Oil Defendants argue that the Town's claims against them must be dismissed because they are predicated on an accident for which Irving Oil received a general release. The Town contends that there are fact issues as to whether the Town ever entered into the release, and whether the parties intended to release Irving Oil from liability associated with MTBE contamination of the Town's water supply. The Irving Oil Defendants respond that Town Attorney Welch and Fire Chief Cote had apparent authority to bind the Town because the Selectboard created the appearance of authority in them, and the Town ratified the release. They add that accepting the Town's argument that the release only encompasses the particular claims specifically discussed by the par-

25. Letter from Town Attorney Welch to Lucien Beam, dated November 12, 1999, Ex. 11 to Beam Aff.

26. *Id.*

27. *See* Irving 56.1 Stmt. ¶ 26; Town 56.1 Stmt. ¶ 26; Release executed by Irving Oil, Ex. 13 to Beam Aff.

28. Fed.R.Civ.P. 56(c).

29. *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

30. *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

31. *See Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir.2004).

32. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

33. *Powell*, 364 F.3d at 84 (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)).

34. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004).

ties would defeat the purpose of general releases: finality and closure.

## A. Actual Authority

 The effect of the Release on the Town depends on whether Fire Chief Cote had actual or apparent authority to sign for the Town. Generally, a municipal corporation is not bound by a contract unless the person who executed the contract was granted authority by the municipality to enter into the contract on the municipality's behalf.[35] "[T]he party dealing with an agent of a municipal corporation carries the burden of ascertaining whether the agent is within the limitation of his or her authority. '[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that

he who purports to act for the Government stays within the bounds of his authority.'"[36]

Irving Oil has offered no evidence whatsoever that Fire Chief Cote had actual authority to bind the Town. Indeed, all the evidence is to the contrary. According to Town Manager Stacey, the Selectboard must grant authority to an individual before he or she may bind the Town in a release; in the normal course of business, this grant of authority is reflected in the Selectboard minutes.[37] Having reviewed the Selectboard minutes from December 2, 1997, to January 6, 2003, it appears that when the Selectboard executes a document, it notes either that the document was "signed" at the meeting, or that certain individuals were "authorized" to represent the Town.[38] While the Selectboard

35. *See Lakeside Equip. Corp. v. Town of Chester,* 173 Vt. 317, 325, 795 A.2d 1174 (2002) ("The general rule is that parties who contract with municipal corporations are bound to take notice of the power of a particular person or agency to make the contract."); *Petition of Vt. Elec. Power Producers, Inc.,* 165 Vt. 282, 290, 683 A.2d 716 (1996) (general counsel did not create a binding commitment on behalf of Public Service Boards because his authority did not include the power to create public franchises on behalf of the PSB).

36. *City of Burlington v. Zurn Indus., Inc.,* 135 F.Supp.2d 454, 458 (D.Vt.2001) (quoting *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)).

37. *See* Stacey Decl. ¶ 10 (also noting that this policy was in place in 1999, when Fire Chief Cote executed the Release).

38. *See* Town of Hartland Selectboard Minutes ("Minutes"), Ex. A to Supplemental Declaration of Robert Stacey in Opposition to the *Irving Oil Defendants' Motion for Summary Judgment: id.* (Mar. 2, 1998) (signing four second class liquor licenses and Agency of Transportation Annual Financial Plan for Town Highways); *id.* (July 7, 1998) (authorizing clerk "to sign a resolution to maintain the present insurance carrier"); *id.* (Mar. 1,

1999) (signing request of the Agency of Transportation to conduct a speed survey, as well as waste water disposal agreement with Town of Hanover); *id.* (May 17, 1999) (signing permits for buried telephone cable); *id.* (June 7, 1999) (signing licenses for mobile home parks and grant application between State and Town for resurfacing, and FEMA Policy for Transportation Construction Improvements); *id.* (July 6, 1999) (signing renewal lease agreements with tenants renting a town building); *id.* (July 19, 1999) (signing amendment of property listing); *id.* (Aug. 23, 1999) (signing computer appraisal service agreement with the State of Vermont Department of Taxes); *id.* (June 5, 2000) (authorizing Chairman Richardson to sign a letter of intent with regard to application for a planning grant to study intersection of I–91 and Route 5); *id.* (Jan. 15, 2001) (authorizing Town Manager Stacey to renew elevator maintenance contract); *id.* (Nov. 5, 2001) (authorizing Chairman Richardson "to sign all legal documents representing the town" in relation to land purchase); *id.* (June 18, 2001) (authorizing Town Manager Stacey to sign agreement between Hartland Nature Club, Hartland Community Arts, and the Town); *id.* (Dec. 2, 2002) (authorizing Town Manager Stacey "to sign agreement with state to locate parking area and cross other town property while building new Route 5 south bridge").

permitted Fire Chief Cote and others to negotiate with Irving Oil, it did not grant Cote authority to execute an agreement on behalf of the Town, nor did it authorize Town Selectman Campbell to release Irving Oil from liability associated with the 1997 rollover and spill.[39]

## B. Apparent Authority

 However, even where the municipality has not authorized an agent's action, it may still be bound if it " 'manifestly appears that the agent was acting within the scope of his authority, or that he has been held out as having authority.' "[40] The Vermont Supreme Court has explained:

> Apparent authority . . . does not derive from the manifestation of consent by a principal to an agent of the agent's power to affect the legal relations of the principal. Rather, it derives from conduct of the principal, communicated or manifested to the third party, which reasonably leads the third party to rely on the agent's authority. Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent. Apparent authority also may arise when the principal knowingly permits the agent to act in a certain manner as if he were authorized. The action or

manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable.[41]

Nonetheless, the parameters of this doctrine are "sharply circumscribed when the principal is a municipal corporation."[42]

As a result of Fire Chief Cote's involvement in the negotiations as well as correspondence from Town Attorney Welch and Town Selectman Campbell to Irving Oil, the issue of apparent authority is not as clear cut. From the time of the spill, Mr. Beam was regularly communicating with Fire Chief Cote and Fire Secretary Cooper concerning the Fire Department's bill for services. Their participation continued in the meetings with Town Manager Stacey, Town Attorney Welch, and Town Selectman Campbell. The Town's presence at these meetings could be interpreted as sanctioning Fire Chief Cote's course of conduct with Irving Oil.[43] Furthermore, the letters from Town Selectman Campbell and Town Attorney Welch suggest that they were speaking on behalf of the Town. However, these letters were hardly models of clarity. At times they refer to a release between the Fire Department and Irving Oil, and at other times refer to a release by the Town.[44]

---

39. *See* Minutes (Oct. 19, 1998) ("Dexter Cooper explained and updated Fire Department's position in ongoing disagreement with Irving Oil. Tom Campbell met with Lucien Beam of Irving Oil recently to find some common ground. It was agreed by Board to have Dexter Cooper, Mark Cote, Bob Stacey and Tom Campbell meet with Mr. Beam and get this settled. The Fire Department has been advised by Peter Welch.").

40. *City of Burlington,* 135 F.Supp.2d at 459 (quoting *Hawkins v. United States,* 96 U.S. 689, 691, 6 Otto 689, 24 L.Ed. 607 (1877)).

41. *New England Educ. Training Serv., Inc. v. Silver Street Partnership,* 148 Vt. 99, 105, 528 A.2d 1117 (1987).

42. *Lakeside,* 173 Vt. at 325, 795 A.2d 1174.

43. *See Dutch Hill Inn, Inc. v. Patten,* 131 Vt. 187, 195, 303 A.2d 811 (1973) (two stockholders of the plaintiff corporation had authority to bind the corporation to the release because the corporation had been consistently doing business through them).

44. *See supra notes* 19–21, 25–26 and accompanying text.

■ However, apparent authority derives from the conduct of the *principal*—in this case, the Town—and not from the conduct of its agents.[45] The Town disputes that it ever held out Fire Chief Cote or Town Selectman Campbell as agents authorized to release Irving Oil from liability. Although representatives from the Town Selectboard (Stacey and Campbell) attended meetings with Irving Oil, there is no evidence in the record that Irving Oil was told that Fire Chief Cote, Town Selectman Campbell, or Town Attorney Welch had authority to speak for, or to bind, the Town. An atmosphere of negotiations is not sufficient to confer authority to settle.[46] The Selectboard Minutes reveal that although the Town was apprised of the negotiations surrounding the bill for emergency response costs, it regarded the dispute as one between the Fire Department and Irving Oil, rather than between the Town and Irving Oil.[47] For example, the Minutes state: "Fire Department has settled claim against Irving Oil clean-up oil spill on the Quechee Road,"[48] and "Irving Oil and Fire Department are finalizing a mutually acceptable release related to the 1997 Quechee Road oil spill."[49] The Release signed by Fire Chief Cote was not presented to the Selectboard for approval, nor is there any indication that the Selectboard was shown drafts of the letters sent to Irving Oil. Furthermore, even though Town Selectman Campbell had been involved in the negotiations, he informed Irving Oil that he had stepped down as chairperson of the Selectboard. Because it is not clear whether Town Selectman Campbell was acting within the scope of his authority, a question exists as to whether Irving Oil's reliance on Town Selectman Campbell's representations was reasonable.[50] I therefore find that fact is-

45. *See Lakeside*, 173 Vt. at 325, 795 A.2d 1174; *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir.1989) ("Second Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and explicitly rejects the notion that an agent can create apparent authority by his own actions or representations.").

46. *See Lakeside*, 173 Vt. at 326, 795 A.2d 1174 (denying summary judgment because record did not demonstrate a prior course of dealing or other circumstances sufficient to indicate that the town's employee had actual or apparent authority to enter into contract at issue); *New England*, 148 Vt. at 106, 528 A.2d 1117 (finding that "an atmosphere of offers" by the defendant's attorney during settlement negotiations was "no substitute for conduct on the part of the principal which can support a finding of apparent authority to settle").

47. *See* Minutes (Feb. 2, 1998) ("Bob Stacey reported that Irving Oil Company was strongly objecting to invoice received from the Hartland Fire Department for cleanup expenses related to gasoline truck roll-over on the Hartland Quechee Road last year."); *id.* (Feb. 17, 1998) ("Dexter Cooper reported from the Fire Department that they were hav-

ing problems collecting a bill sent to Irving Oil for reimbursement of expenses incurred when their gas truck rolled over on the Hartland–Quechee Road last fall. They will rethink the charges and attempt to collect."); *id.* (Mar. 16, 1998) ("Mark Cote and Dexter Cooper discussed the status of an invoice dated August 18, 1997, in the amount of $5833 that HVFD issued to Irving Oil for expenses incurred while responding to an overturned fuel truck carrying gasoline on the Hartland–Quechee Road on July 24, 1997. The parties are currently discussing the merits of this invoice."); *id.* (Mar. 24, 1998) ("Reviewed accident report involving Irving Oil Co. tanker on July 24, 1997. Hartland Fire Department billing in question. No action taken. Town Manager to talk with Dexter Cooper."); *id.* (Sept. 8, 1998) ("Tom Campbell and Dexter Cooper to meet Lucien Bean [sic] of Irving Oil. They will try to resolve problems of unpaid bill for services at oil spill on Quechee Road.").

48. *Id.* (Dec. 7, 1998).

49. *Id.* (Dec. 21, 1998).

50. *See* 3/31/99 Letter.

sues exist regarding Fire Chief Cote's apparent authority to bind the Town.[51]

## C. Scope of Release

 In addition, even if the Town were bound by the Release, there is a genuine issue of material fact regarding its scope. A release is a contract, "barring recovery of all or any part of the claim, unless something in its terms indicates a contrary intention in the parties. Such compromises of disputed liability by parties fully cognizant of the facts and issues are not only valid, but favored as a matter of public policy."[52]

> Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable. If ambiguity if found on that basis, the court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed terms. If, however, no ambiguity is found, then the language must be given effect in accordance with its plan, ordinary and popular sense.[53]

Nonetheless, if an "inartfully worded or clumsily arranged [contract] fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.

Likewise, the fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous."[54]

The release at issue here is facially ambiguous because it purports to be made on behalf of the Town and the Fire Department, but Fire Chief Cote signed it in his capacity as "Fire Chief, Hartland Volunteer Fire Department."[55] Although Town Selectman Campbell also signed the document, he did so as a witness to the agreement and not as an agent of the Town Selectboard.[56] The language of the Release itself is unclear because it states that "Town of Hartland and Hartland Fire Volunteer Fire Department . . . does for *itself* and *its* successors and assigns, remise, release and forever discharge the said Irving Oil Corporation. . . ."[57] The Release could reasonably be interpreted as binding on either the Fire Department, or the Fire Department and the Town. "While the construction of a release or contract is normally a question of law, when the language of the document is ambiguous and must be clarified by reference to external evidence, construction becomes a question of fact."[58]

 Under Vermont law, the scope of a release "is determined by the 'intention of the parties as expressed in the terms of a particular instrument considered in the light of all facts and circumstances.'"[59] In deciding "whether a

---

51. *See City of Burlington,* 135 F.Supp.2d at 460 ("Because '[a] contract enforceable against a municipal corporation may be proved by circumstances, acts, conduct, and sayings of municipal officers having authority to bind the corporation[,]' *Town Dist. of Hardwick v. Town Dist. of Wolcott,* 78 Vt. 23, 61 A. 471, 471 (1905), whether the release is legally valid remains a genuine issue of material fact best left to the fact finder that cannot be decided as a matter of law.").

52. *Anderson v. State of Vermont,* 147 Vt. 394, 396, 518 A.2d 360 (1985) (citations omitted).

53. *Isbrandtsen v. North Branch Corp.,* 150 Vt. 575, 579, 556 A.2d 81 (1988).

54. *Id.* at 580–81, 556 A.2d 81 (citation omitted).

55. *See* General Release.

56. *See id.*

57. *Id.*

58. *Investment Props., Inc. v. Lyttle,* 169 Vt. 487, 498, 739 A.2d 1222 (1999).

59. *Leo v. Hillman,* 164 Vt. 94, 104, 665 A.2d 572 (1995) (quoting *Economou v. Economou,* 136 Vt. 611, 619, 399 A.2d 496 (1979)).

particular claim has been discharged, the primary rule of construction is that this intention is to be determined by a consideration of what was within the contemplation of the parties when the release was executed...." [60] Thus, Vermont has rejected the traditional "four corners" test or "plain meaning rule" in favor of allowing "the admission of evidence as to the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing." [61]

After the 1997 rollover accident, Vermont's Agency of Natural Resources determined that there was no threat to the local water supply from the Irving Oil spill. Town Manager Stacey attended numerous internal meetings with Fire Department personnel and Town representatives and external meetings with Irving Oil. He asserts that all discussions "focused entirely on whether the emergency response costs associated with the July 24, 1997, rollover and spill were reasonable. There was never a discussion of liability for the future costs of water supply contamination with MTBE or any other future costs." [62] He further states: "Since we had no reason to believe that the Town's water supply was at risk—and in fact had been specifically told by the State that the water supply was not at risk—water supply contamination was neither contemplated nor discussed during those meetings and negotiations." [63] Given that Irving Oil paid $2,916.50 to the Fire Department, it is reasonable to infer that the agreement only pertained to the emergency response costs, and not the Irving Oil Defendants' potential liability for water contamination.

Therefore, defendants' motion for summary judgment is denied.

■■■ One additional point must be made—even a valid release would not entitle the Irving Oil Defendants to be dismissed from this action. The Town's reference to the 1997 spill in its complaint cannot be fairly interpreted as the only basis for the Town's claims against the Irving Oil Defendants. The complaint states: "At all times relevant to this litigation, Defendants were or should have been aware that MTBE's contamination of groundwater was inevitable, as a result of . . . the long history of nationwide gasoline spills, leaks, and other losses during distribution, sale, and use." [64] *"In fact,* in 1997 a truck owned and operated by Defendant Irving Oil negligently spilled a substantial amount of gasoline in the town of Hartland, Vermont. . . ." [65] It is fair to infer that the Town cites the 1997 spill as only one example of defendants' knowledge that MTBE posed a threat to groundwater as a result of unintended discharges of gasoline. Moreover, the Town's complaint does not limit the claims against defendants to any particular spill or spills. All defendants are alleged to have manufactured and distributed MTBE-containing gasoline, knowing of its adverse environmental and health effects, and concealing its dangers from the Town, the Environmental Protection Agency, and the public.[66] If the Town were seeking relief for specific spills of MTBE-containing gasoline, there would be no need for it to rely on market share liability because it would be able to identify which defendants had caused its harm. Similarly, the Release

60. *Economou,* 136 Vt. at 619, 399 A.2d 496.

61. *Isbrandtsen,* 150 Vt. at 578, 556 A.2d 81.

62. Stacey Decl. ¶¶ 7–8.

63. *Id.* ¶ 9.

64. Hartland Compl. ¶ 107.

65. *Id.* ¶ 113 (emphasis added).

66. *See id.* ¶¶ 8, 198–201.

would not shield the Irving Oil Defendants from claims arising from other contamination events, such as consumer overfills, nor would it protect them from claims accruing after January 10, 1999, the date the Release was executed.[67]

## IV. CONCLUSION

For the reasons set forth above, Irving Oil's motion for summary judgment is denied. The Clerk of the Court is directed to close this motion.

SO ORDERED.

67. A valid release might be important for apportionment under market share liability. If the Irving Oil Defendants were to prove that they only marketed and sold MTBE-containing gasoline in the Town of Hartland within the limited time period of the spill, it is possible that they could be relieved from paying any damages.